FILED
2014 Jun-23  PM 03:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **VERONICA PERRY o/b/o T.L.P.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **2:12-cv-2189-AKK** |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff Veronica Perry ("Perry") brings this action on behalf of her daughter, T.L.P. ("Claimant"), pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence. Therefore, for the reasons elaborated herein, the court will affirm the decision denying benefits.

### I. Procedural History

Perry protectively filed an application on behalf of her minor child T.L.P. for the child's Supplemental Security Income ("SSI"), alleging a disability onset date of

December 22, 1994, due to heart problems.[1]  (R. 16, 151).  After the SSA denied her

claim, the Claimant requested a hearing before an ALJ.  (R. 93-94).  The ALJ

subsequently denied the Claimant's claim, (R. 13-28), which became the final decision

of the Commissioner when the Appeals Council refused to grant review.  (R. 1-6).

Perry then filed this action for judicial review pursuant to 42 U.S.C. § 1383(c)(3).  Doc.

1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial

evidence to sustain the ALJ's decision, *See* 42 U.S.C. § 405(g); *Walden v. Schweiker*,

672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal

standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*,

792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. § 405(g) mandates that the

Commissioner's "factual findings are conclusive if supported by 'substantial

evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district

court may not reconsider the facts, reevaluate the evidence, or substitute its judgment

for that of the Commissioner; instead, it must review the final decision as a whole and

determine if the decision is "reasonable and supported by substantial evidence." *See id*.

(citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).  Substantial

---

[1]  Although SSI is not payable prior to the month following the month in which
the application was filed, *see* 20 C.F.R. § 416.335, the ALJ considered the complete
medical history in accordance with 20 C.F.R. § 416.912(d).  (R. 16.)

evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

A claimant under the age of eighteen is considered disabled if she has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and which is expected to result in death, or which has lasted or is expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(C)(I).  The regulations define the statutory standard of "marked and severe functional limitations" in terms of "listing-level severity."  20 C.F.R. §§ 416.902, 416.906, 416.924(a), 416.926a(a); *see* 20 C.F.R. pt. 404, subpt. P, app. 1 (the listings).  The Commissioner has developed a specific sequential evaluation process for determining whether a child claimant is disabled.  20 C.F.R. § 416.924.  The three-step process requires a child to show:  (1) that she is not working; (2) that she has a "severe" impairment or combination of impairments; and (3) that her impairment or combination of impairments is of listing-level severity, that is, the impairments meet, medically

equal, or functionally equal the severity of an impairment in the listings. 20 C.F.R. § 416.924.

If a child claimant is not working and has a severe impairment, the ALJ must determine if the child's impairments meet or medically equal an impairment listed in the listings. 20 C.F.R. § 416.924(a)-(d). An impairment medically equals a listing "if it is at least equal in severity and duration to the criteria of any listed impairment." If a claimant's impairments do not meet or medically equal a listed impairment, the ALJ must then determine if the child's impairments are, instead, functionally equivalent in severity. 20 C.F.R. §§ 416.924(d), 416.926a(a). For the child's impairments to functionally equal a listed impairment, they must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). The ALJ considers the child's functioning in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for herself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(I)-(vi). If the impairments do not satisfy the duration requirements, or do not meet, medically equal, or functionally equal one of the listings in the Regulations, a finding of not disabled is reached and the claim is denied. See 20 C.F.R. § 416.924(d)(2).

## IV. The ALJ's Decision

In performing the three step analysis, initially, the ALJ determined that the Claimant had not engaged in any substantial gainful activity since February 25, 2009,

the date of her application.  (R. 19).  Next, in satisfaction of Step Two the ALJ noted

that the Claimant suffers from the severe impairments of "congenital heart disease,

depression, DiGeorge Syndrome, and borderline intelligence."  *Id.*  Finally, at Step

Three, the ALJ concluded that the Claimant's impairments did not meet, medically

equal, or functionally equal any of the listed impairments and, therefore, found that the

Claimant was not disabled.  (R. 20, 28).

## V.  Analysis

The court now turns to Perry's contentions that the ALJ erred in (1) rejecting the

opinions of the consultative psychological examiner; (2) failing to consider whether the

Claimant's impairments medically equaled a listing; and (3) failing to develop the

record.  *See* doc. 11 at 6-10.  The court addresses each contention in turn.

>    A.    <u>The ALJ committed no reversible error in rejecting the opinions of the
>          consultative psychological examiner.</u>

Perry contends the ALJ erred in rejecting the opinions of Dr. H. Randall

Griffith, Ph.D., a clinical neuropsychologist, who examined the Claimant after her ALJ

hearing at the request of the Commissioner.  (R. 338-345).  Dr. Griffith described the

Claimant's past medical history as follows:

> DiGeorge syndrome (chromosome 22 deletion associated with
> multi-organ abnormality, growth delay, developmental delay, intellectual
> impairment, and congenital heart defects, among other abnormalities),
> Teratology of Fallot,[2] and cleft palate.  She underwent several procedures

---

[2]    Tetralogy of Fallot is a rare condition caused by a combination of four
heart defects that are present at birth.  These defects, which affect the

for repair of her heart defects at three weeks of age. [The Claimant] was reportedly born on time and there were no complications with her birth. She was described by her mother as being a "blue baby" at three weeks of age and was acutely ill. She also was experiencing seizures in her sleep at this age, but has not experienced any such seizures since that time. Developmental milestones were delayed in her speech, which reportedly began at age 3. All other developmental milestones were described as being on time.

(R. 338). In conjunction with his examination, Dr. Griffith completed a form indicating the Claimant had "marked" impairments in the domains of "Interacting and Relating with Others" and "Caring for Self." (R. 343-45). These findings conflict with the ALJ's finding of a less than marked limitation in interacting and relating with others, and no limitation in the ability to care for herself. (R. 25-27).

In assessing Dr. Griffith's opinions, the ALJ gave Dr. Griffith's opinions no weight, in part, because Dr. Griffith "based [them] on a single examination and it is not apparent that Dr. Griffith had the benefit of the medical evidence of record in making his determination."[3] (R. 23). The regulations permit an ALJ to reject an opinion from

_____

structure of the heart, cause oxygen-poor blood to flow out of the heart and into the rest of the body. Infants and children with tetralogy of Fallot usually have blue-tinged skin because their blood doesn't carry enough oxygen.

http://www.mayoclinic.org/diseases-conditions/tetralogy-of-fallot/basics/definition/con-2
0043262

[3] Plaintiff's counsel acknowledged that Dr. Griffith did not appear to have access to much of the relevant evidence when performing his evaluation: "It is not clear what records if any were provided to [Dr. Griffith] whose assessment was based apparently on claimant['s] and her mother's reports of events and history. He expressly noted the lack of the most recent evaluation at Children's Hospital and school records." (R. 207).

6

a physician who does not have a treating relationship with the claimant.[4]  *See* 20 C.F.R.

§ 416.927(c).  Moreover, the ALJ also rejected Dr. Griffith's opinions because they

were inconsistent with Dr. Griffith's own notes:

> In addition, Dr. Griffith's opinion that the claimant is marked in the
> functional equivalence domain of interacting and relating with others is
> inconsistent with his own notes from his examination where he reported
> the claimant's social and adaptive functioning were only mildly age
> inappropriate in that she has friends with whom she engages in activities.

*Id.*  The ALJ committed no error here because even a treating physician's opinion may

be rejected if it is inconsistent with the doctor's own medical records.  *See Lewis v.*

*Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (good cause exists to reject a treating

physician's opinion when it is inconsistent with his own medical records).

Based on the court's review of the record, the ALJ properly applied the

regulations and articulated good cause for rejecting Dr. Griffith's opinions.  Therefore,

substantial evidence supports the ALJ's decision and there is no reversible error.

B.    The ALJ did not err in finding the Claimant's impairments did not
      medically equal a listing.

Perry next contends the ALJ "did not recite or apply the medical equivalence

standard," Doc. 8 at 8, and asserts the ALJ should have "considered medical

equivalence on the basis of a chronic condition affecting multiple areas of functioning

---

[4]  In addition to considering whether a treating relationship exists, in determining
how much weight to give to each medical opinion, the ALJ must also consider whether
the doctor (1) is a specialist; (2) has examined the claimant; (3) presented medical
evidence and explanation supporting his opinion; and (4) provided an opinion that is
consistent with the record as a whole. 20 C.F.R. § 416.927(c).

and body systems, including DiGeorge syndrome." *Id.* at 9.  Contrary to Perry's

contention, the ALJ specifically stated that he "evaluated the claimant's impairments

under the multiple body system listings, 110.00 et seq., cardiovascular system, 104.00

et seq., organic mental disorders, 112.02, and mood disorders, 112.04, and found that

the claimant's impairments do not meet *or equal* the criteria of any of the impairments

described [in those listings]."  (R. 20) (emphasis added).  The ALJ further found that

"there are no opinions in the record from medical experts or any other type of medical

or psychological consultants designated by the Commissioner, which indicate that the

claimant's impairments alone or in combination equal a listing." *Id.*  Indeed, one of the

Commissioner's medical consultants, Dr. Richard Whitney, who is a specialist in

pediatrics,[5] reviewed the evidence and concluded the Claimant's impairments did not

medically equal a listing.  (R. 248).

Ultimately, the Claimant bears the burden of presenting medical evidence

showing her impairments equal a listing:

> For a claimant to qualify for benefits by showing that his unlisted
> impairment, or combination of impairments, is "equivalent" to a listed
> impairment, he must present medical findings equal in severity to *all* the
> criteria for the one most similar listed impairment.

*Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis in original).  Unfortunately,

here, Perry points to no medical evidence or opinion that shows the Claimant's

---

[5] Dr. Whitney's specialty code is 32, (R. 249), which signifies he is a specialist in pediatrics.  Program Operations Manual System, DI 26510.090, Sec. D, Code 32, *available at* https://secure.ssa.gov/poms.nsf/lnx/0426510090.

impairments equal a listing.  Therefore, Perry failed to meet her burden of establishing

that the ALJ committed reversible error by finding the Claimant's impairments did not

equal a listing.

      C.      <u>The ALJ did not err in failing to develop the record.</u>

Finally, Perry contends the ALJ erred by failing to develop the record after

rejecting the opinions of Dr. Griffith.  Doc. 8 at 8.  However, before remanding a case

for further development, a reviewing court must consider "whether the record reveals

evidentiary gaps which result in unfairness or 'clear prejudice.'"  *Smith v. Schweiker*,

677 F.2d 826, 830 (11th Cir.1982) (quoting *Ware v. Schweiker*, 651 F.2d 408, 413 (5th

Cir. Unit A July 1981).  Consequently, "there must be a showing of prejudice before [a

reviewing court] will remand for further development of the record."  *Robinson v.

Astrue*, 365 F. App'x 993, 995 (11th Cir. 2010) (unpublished) (citing *Brown v. Shalala*,

44 F.3d 931, 935 (11th Cir. 1995).  Remand is not warranted here because the record

contains extensive treatment notes documenting the Claimant's impairments, school

records, and a consultative examination by Dr. Decontee Jimmeh, which includes an

opinion as to the Claimant's physical limitations.  (R. 244-47).  Moreover, Perry failed

to identify the existence of any evidentiary gaps that prevent the ALJ from making an

informed decision on the Claimant's application for benefits.  To the contrary, the

current record contains sufficient medical and other evidence to allow the ALJ to make

a determination on whether the Claimant was disabled.  As such, no additional

development was required, *see* 20 C.F.R. § 416.913(e), and Perry's contention to the contrary is unavailing.

## VI.  Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that the Claimant is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination.  Therefore, the Commissioner's final decision is **AFFIRMED**.  A separate order in accordance with the memorandum of decision will be entered.

Done the 23rd day of June, 2014.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE